# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HISENSE USA CORP.,** | |
| Plaintiff, | Case No. 14 C 7485 |
| v. | Judge Harry D. Leinenweber |
| **CENTRAL TRANSPORT, LLC,** | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

This case concerns a lost pallet of computer tablets and a carrier's resulting liability under the Carmack Amendment. The carrier, Defendant Central Transport LLC ("Central"), has moved for partial summary judgment limiting its liability to $82.23 [ECF No. 18], and Plaintiff Hisense USA Corp. ("Hisense") has moved for leave to withdraw or amend its admission to Request to Admit No. 3 [ECF No. 22]. For the reasons stated herein, both Motions are denied. Pursuant to this Court's instruction at the June 10, 2015 hearing, Central is awarded $1,631.25 in attorneys' fees incurred in responding to Hisense's Motion.

### I. BACKGROUND

Before summarizing the factual background of this case, the Court must address certain responses Hisense has made to Central's Local Rule 56.1(a)(3) statement. Hisense frequently responds that it "lacks sufficient knowledge to admit or deny"

certain information and that such information is therefore denied. (*See,* Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Stmt. of Facts, ECF No. 28, ¶¶ 7, 11–12, 15–25.) Denials of this type are improper and constitute an admission. *McGuire v. United Parcel Serv.,* 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material."). Because the facts of this case are undisputed, the Court draws the following information from Central's statement of facts.

Hisense manufactures and sells electronic goods to retailers across North America, including Walmart. When Walmart discovered that four pallets of computer tablets it received were defective, it made arrangements to return the goods to Hisense. With Hisense's authorization, Walmart arranged for Central to transport all four pallets from its Johnstown, New York return center to Hisense's El Paso, Texas facility.

On January 28, 2014, Central arrived at Walmart's return center to pick up a trailer containing the pallets. Central accepted the goods under a bill of lading that Walmart prepared, identifying the goods as electronics, and specifying that "All

shipments are hereby released to the value at which the lowest freight charges apply." Consistent with Central's practice, the driver placed a "PRO sticker" on the bill of lading and signed the bill to indicate receipt. The PRO sticker denoted that Central was receiving the goods "Subject to NMFC 100, CTII Rules Tariff [the "Rules Tariff"], 49 USC 14706 and 49 CFR 370." After Central affixed the sticker, Walmart signed the bill of lading. Although Hisense argues that "it is impossible to know exactly when the PRO sticker was affixed to the [bill of lading]," (Pl.'s Resp. at 4), Central has established, through the declaration of Andrea Bouchard, (Ex. D to Def.'s Mem., ECF No. 20-4), that its driver placed the sticker on the bill of lading at the time the shipment was received and before Walmart signed.

On February 4, 2014, Central arrived with the trailer in El Paso. Hisense alleges that one pallet containing 715 tablets weighing 822.25 pounds was missing, and signed a delivery receipt to this effect. The delivery receipt contained an image of the bill of lading, including the PRO sticker.

According to Central, the Rules Tariff sets forth the rules, charges, and provisions pertaining to Central's transportation services. It is available to all customers upon request and can also be found on Central's website. Item 780 of the Rules Tariff defines certain goods — including computers —

as "Restricted Commodities" and limits Central's maximum liability to $0.10 per pound per piece. Under the National Motor Freight Classification ("NMFC"), of which Central is a member, tablets are encompassed within the definition of "computers."

Item 783 of the Rules Tariff sets forth a procedure by which a shipper may request a higher liability level. Neither Hisense nor Walmart ever requested liability higher than Central's standard maximum for restricted commodities.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which [it] bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the nonmoving party. *Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

### III. ANALYSIS

#### A. Central's Motion for Partial Summary Judgment

Hisense brings its claim pursuant the Carmack Amendment, which allows shippers to recover for actual loss and damage that occurs during interstate transport. *See,* 49 U.S.C. 14706(a)(1). The bill of lading, which serves as the transportation contract between shipper and carrier, *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.,* 696 F.3d 647, 652 (7th Cir. 2012), identifies Hisense as the consignee. As the consignee, Hisense "stands in the shoes" of Walmart, its authorized shipper. *See, Valerus Compression Servs., L.P. v. Lone Star Transp., LLC,* No. 10-C-517, 2011 WL 3566865, at *4 (E.D. Wis. Aug. 15, 2011).

Carriers may limit their liability under the Carmack Amendment if they:

> (1) maintain an appropriate tariff pursuant to 42 U.S.C. § 13710(a)(1); (2) obtain the shipper's agreement as to her choice of liability; (3) give the shipper a reasonable opportunity to choose between two

> or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Opp v. Wheaton Van Lines, Inc.,* 231 F.3d 1060, 1063 (7th Cir. 2000) (citations omitted). Before its abolishment in 1995, carriers were required to file their tariffs with the Interstate Commerce Commission. *See, Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000). Today, under 42 U.S.C. § 13710(a)(1), they need only provide shippers, upon request, "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." The shipping industry continues to refer to these standard contract terms as tariffs "out of habit." *Tempel,* 211 F.3d at 1030.

The parties do not dispute that Central maintains an appropriate tariff which is available online and upon request, or that Central properly issued a bill of lading. At issue is whether Central obtained Hisense's agreement to the liability limitation contained in the Rules Tariff. According to Central, the liability limitation was incorporated into the bill of lading by reference — this occurred through the PRO sticker, which specifically cited the Rules Tariff, and the general provision the bill of lading that the shipment was received "subject to the classification and lawfully filed tariffs in

affect [*sic*]." Moreover, by specifying that the shipment was released to the value "at which the lowest freight charges apply," Walmart indicated its "knowledge of the varying rates and liability limitations contained in the tariff." (Def.'s Reply, ECF No. 30, at 11.) Hisense counters that "actual notice" of a liability limitation is required for the limitation to be enforceable, and that it cannot be provided by mere reference to a tariff, or established by formulaic language on the Walmart-prepared bill of lading.

*Tempel* is the only Seventh Circuit case that directly addresses whether a liability limitation contained in a carrier's tariff can be incorporated into a bill of lading by reference, or whether "actual notice" of the limitation is also required. In *Tempel,* a carrier was charged with transporting a large machine press into Mexico. *Id.* at 1029. When an accident occurred on Mexican soil, damaging the press, the carrier sought to invoke the liability limitation contained in its tariff, which provided that the carrier could not be held liable "for any loss or damage to a shipment within the country of Mexico." *Id.* at 1030. The carrier argued that the tariff applied because the bill of lading stated that the press was received "subject to the classifications and tariffs in effect." *Id.* The Seventh Circuit rejected this argument, noting that the bill of lading made no specific reference "by number or other identifier" to

the carrier's tariff. *Id.* Even if it had, the court went on, "actual notice is necessary for a limitation of liability to be enforced." *Id.* at 1031 (citing *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1419-20 (7th Cir. 1987)).

Since *Tempel,* a number of courts have drawn a distinction between shipper- and carrier-prepared bills of lading. In the case of shipper-prepared bills of lading, these courts have held that general principles of contract law bind the shipper to the bill's terms, even if the shipper lacks "actual knowledge of the limiting aspect of those terms." *Siren, Inc. v. Estes Express Lines,* 249 F.3d 1268, 1274 (11th Cir. 2001) (holding that shipper's reference to "Class 85" in bill of lading resulted in limitation of liability, even though shipper lacked actual knowledge of that term's "liability-limiting attribute"); *see also, AIM Controls, LLC v. USF Reddaway, Inc.,* No. H-08-CV-1662, 2008 WL 4925028, at *3 (S.D. Tex. Nov. 17, 2008) (collecting cases and holding that shipper's signature on shipper-prepared bill of lading after carrier had affixed a sticker referencing tariff resulted in limitation of liability).

Consistent with this line of cases, Central urges that "[t]he traditional rules of contract interpretation . . . mandate incorporation of Central's tariff terms." (Def.'s Reply, ECF No. 30.) Central relies on *Valerus,* a case from the Eastern District of Wisconsin, in which the court held that a

shipper-prepared bill of lading referencing "tariffs in effect" subjected the shipper to the liability limitations contained in the carrier's tariff:

> If [the shipper] was not referencing and incorporating [the carrier's] classifications and tariffs, whose was it incorporating? Once again, it bears mention that a bill of lading is in essence a contract, and general principles of contract interpretation are applied when construing it. Among those principles is the rule that ambiguities are construed against the drafter. . . . Here, the only reasonable construction of the bill of lading is that it referenced and incorporated the classifications and tariffs of the carrier.

*Valerus,* 2011 WL 3566865, at *4 (citations omitted).

However, there was more to the bill of lading in *Valerus* than a mere reference to "tariffs in effect." Although the bill of lading incorporated the carrier's tariff, it also contained specific language limiting the carrier's liability. The bill of lading explicitly noted that certain classes of goods may be subject to liability limitations, and in such cases, it was essential for the shipper to declare the maximum value of the shipment on the bill of lading "to ensure assessment of the correct transportation charges." *Id.* at *2. Despite this clear instruction on the shipper's own form, the shipper left blank the space where value could be declared. *Id.*

Hisense relies on *Hillenbrand,* a case from the Southern District of Indiana, in which the court held that a shipper-prepared "shipping order" failed to provide actual notice of the

liability limitation contained in the carrier's tariff. *Hillenbrand Indus., Inc. v. Con-Way Transp. Servs., Inc.*, No. NA 00-0255CBS, 2002 WL 1461687, at *6 (S.D. Ind. June 19, 2002). Like the bill of lading in this case, the shipping order recited that the "applicable tariff" was in effect and included a carrier-affixed sticker identifying that tariff. *Id.* at *1. The court held that the shipping order's vague reference to the "applicable tariff," even combined with the sticker, did not show that the shipper had "actual notice" of the carrier's liability limitation, as *Tempel* requires. *Id.* at *6.

The court also analyzed the carrier's receipt, which, in contrast to the shipping order, "clearly incorporate[d]" the tariff. *Id.* 7. In fine print, the receipt specified that "[t]he terms and conditions of the [NMFC] Series 100 uniform straight bill of lading . . . shall apply subject to exceptions in the carrier's tariffs, pricing schedules, terms, conditions, and rules." *Id.* at *2. It further provided that articles subject to the NMFC "shall be considered released at the lowest released or declared value stated therein," unless a higher value was declared on the bill of lading. *Id.* Nevertheless, the Court found that the receipt provided no evidence of agreement because the shipper had not signed it and it did not include a space where value could be declared. *Id.* at *7.

It is clear from the above cases that even though a carrier's tariff can be incorporated into a bill of lading, evidence of actual notice and agreement is required under *Tempel*. *See, Hillenbrand,* 2002 WL 1461687, at *5 (identifying notice and agreement as "overarching concerns"); *see also, H. Kramer & Co. v. CDN Logistics, Inc.,* No. 13 CV 5790, 2014 WL 3397161, at *4 (N.D. Ill. July 11, 2014) ("The critical inquiry under *Tempel* is whether the shipper has 'actual notice,' and that question cannot be answered merely by looking to whether the bill of lading refers to a tariff."). Both the bill of lading in *Valerus* and the receipt in *Hillenbrand* successfully incorporated the carrier's tariff. In *Valerus*, where the limitation was enforceable, there was also some evidence of agreement — the shipper opted not to declare a value in the space provided. In *Hillenbrand,* where the limitation was unenforceable, such evidence was lacking — the shipper had not signed the receipt and there was no space to declare a value.

Here, the Court finds that the Rules Tariff is incorporated into the bill of lading. The undisputed facts show that: (1) the bill indicated that the shipment was received subject to the "tariffs in affect [*sic*]"; (2) Central's driver affixed a sticker indicating that Rules Tariff applied; and (3) both parties signed the bill of lading. As the court asked in *Valerus,* "If [the shipper] was not referencing and incorporating

[the carrier's] classifications and tariffs, whose was it incorporating?" *Valerus,* 2011 WL 3566865, at *4.

Nevertheless, under *Tempel,* mere reference to the tariff is insufficient to limit liability. Instead, the bill of lading must contain additional language that demonstrates notice and agreement. Here, the bill of lading makes no mention of a liability limitation and contains no blank in which to declare value. The only evidence of notice and agreement that Central has presented is Walmart's indication that the shipment was "released to the value at which the lowest freight charges apply." According to Central, "[t]his explicit language reflects Walmart's knowledge of the varying rates and liability limitations contained in the tariff and, further, reflects Walmart's deliberate decision to obtain freight rates based on the lowest possible liability limit." (Def.'s Reply, ECF No. 30, at 11.) The Court cannot conclude that this broad reading of the bill of lading entitles Central to summary judgment, however. Central has failed to present sufficient evidence showing how Walmart's request for the "lowest freight charges" equates to agreement to limited liability. Accordingly, because Central has not presented sufficient evidence that Hisense had notice of and consented to the liability limitation, Central's Motion for Partial Summary Judgment is denied.

**B. Hisense's Motion for Leave to Withdraw or Amend Admission**

On June 3, 2015, Hisense moved for leave to withdraw or amend its admission to Request to Admit No. 3, in which it indicated that the bill of lading attached to the request was a true and correct copy of the bill of lading under which Central had accepted shipment. The basis for Hisense's Motion to Withdraw was its realization that the bill attached to the request to admit included Central's PRO sticker, while the bill it had filed with the Complaint did not.

On June 10, 2015, the Court agreed to extend briefing on Central's Motion for Partial Summary Judgment so Hisense could conduct additional discovery regarding the discrepancy. The Court indicated that it would assess attorneys' fees against Hisense if it failed to uncover evidence showing that the bill of lading under which Central received the goods did not include the PRO sticker. Hisense has produced no such evidence. Indeed, as a result of its additional discovery efforts, Hisense ultimately learned that "Walmart possessed a bill of lading that contained the PRO Sticker." (Pl.'s Reply, ECF No. 34, ¶ 10.)

The Court has reviewed Central's request for attorneys' fees incurred in responding to Hisense's Motion and finds its request for $1,631.25 — reflecting 7.25 hours of attorney time at a rate of $225 per hour — reasonable. Accordingly, as indicated at the June 10, 2015 hearing, the Court agrees to

award Central attorneys' fees in this amount.  Hisense's Motion for Leave to Withdraw or Amend its Admission is denied.

## IV. CONCLUSION

For the reasons stated herein, Central's Motion for Partial Summary Judgment [ECF No. 18] is denied.  Hisense's Motion for Leave to Withdraw or Amend its Admission to Request to Admit No. 3 [ECF No. 22] is denied.  Central is awarded $1,631.25 in attorneys' fees incurred in responding to Hisense's Motion.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Dated:8/6/2015